Jesús Trujillo Lange y su esposa Antonia Lange Avilés, demandantes y apelantes, *v.* José López Fernández, demandado y apelado.

No. 6372.—*Sometido:* Noviembre 16, 1933. *Resuelto:* Noviembre 29, 1933.

*José Sabater,* abogado de los apelantes; *J. Alemañy Sosa,* abogado del apelado.

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

La acción que se ejercita en este caso tiene por objeto la remoción de un estorbo que según los demandantes tiene el carácter de público. Se alega en la demanda, sustancialmente, que los demandantes son dueños de una casa, con su solar, enclavada en la calle Tendal, esquina a la de la Rosa y marcada con el No. 1 de la primera calle y No. 83 de la segunda, que fué construída con anterioridad al año 1898; y que la expresada calle Tendal, con la que colinda por el oeste la referida casa de los demandantes, ha sido una calle pública desde tiempo inmemorial, y antiguamente y desde tiempo inmemorial se le conocía con el nombre de "Camino del Tendal", por ser éste el camino que conducía al antiguo Tendal, propiedad de don Alfredo Cristy, y desde tiempo inmemorial ese camino llamado del Tendal fué un camino público y ha

estado desde entonces dedicado al público para el transporte de peatones y vehículos por ese sitio, que la calle del Tendal parte de la calle de la Rosa, hoy *Boulevard* de Diego, desde la esquina sur de la casa de los demandantes, en cuyo sitio tiene un ancho de 8 metros 75 centímetros, y en su prolongación de sur a norte hasta la casa de Sucesores de Blanes tiene una longitud de 29 metros 30 centímetros; que el día 16 de octubre de 1931, el demandado José López Fernández, personalmente, y utilizando un pico y azada, procedió al desyerbo, desmonte y relleno de la parte de la calle del Tendal opuesta a la casa propiedad de los demandantes; que el demandante se opuso a esa obra porque pertenecía a las autoridades municipales de Mayagüez, negándose el demandado a paralizarla; que más tarde el demandado edificó una cerca de zinc que obstruye completa y absolutamente el paso de la calle Tendal; que debido a dicha obstrucción los demandantes no pueden entrar en su casa por la calle Tendal y el demandante, Jesús Trujillo Lange, ha recurrido al alcalde de esta ciudad y al ingeniero municipal de Obras Públicas para que procedan a derribar las cercas que estorban la calle del Tendal, por ser dicha calle una calle pública; pero que el alcalde no ha hecho nada, y habiendo recurrido al fiscal del distrito, dicho funcionario tampoco ha realizado ningún acto para hacer desaparecer dicho estorbo; y que si se permitiera que dicha cerca obstruyera la calle del Tendal, se causaría por el demandado al público en general y a los demandantes un daño irreparable, por no poder utilizar, como se utilizaba desde tiempo inmemorial, la calle del Tendal, y se causaría a los demandantes una multiplicidad de pleitos y procedimientos, pues están impedidos de entrar en su casa y de salir de ella, como lo venían haciendo, por la calle del Tendal, y la obstrucción hecha por el demandado hace desmerecer la casa de los demandantes en un 50 por ciento de su valor, que se estima en $5,000, y que los demandantes no tienen otro remedio adecuado y eficaz que su demanda de *injunction* para hacer desaparecer el referido estorbo.

Alega el demandado que tanto el solar en que enclava la casa ocupada por los demandantes como el solar propiedad del demandado formaban una finca de 468 varas cuadradas, o sea, de 18 varas por su frente principal, sur, a la calle de la Rosa, hoy *Boulevard* de Diego, por 26 varas de fondo, y la cual había sido segregada de una finca de una superficie de 71,022 varas cuadradas, que perteneció a la Sucesión Guenard; que dicha finca de 468 varas cuadradas le fué adjudicada a doña Eugenia Antonia Guenard y Carrié, y ésta vendió la mitad de dicha finca, o sea 9 varas de frente por 26 de fondo, que es el solar en que enclava la casa ocupada por los demandantes y que anteriormente perteneció a don Nicomedes Sánchez y su esposa doña Anastasia Ramos, y después a doña Margarita Avilés, madre de la demandante doña Antonia Lange Avilés de Trujillo; y que las otras 234 varas cuadradas, o sea, 9 varas de frente por 26 de fondo, se las había vendido la Sra. Guenard y Carrié al demandado, por escritura otorgada en la ciudad de Mayagüez, ante el Notario Mariano Riera Palmer, en 10 de agosto de 1908; que el solar vendido al Sr. Sánchez y que después perteneció a la madre de la demandante, Sra. de Trujillo Lange, colinda por el oeste con el solar comprado por el demandado, y que dicho solar perteneciente al demandado colinda por el oeste con la prolongación de la calle San Agustín; que cuando él compró dicho solar en 1908, era un precipicio, destinado a basurero, inaccesible a toda comunicación en cualquier clase de vehículo, y teniendo el demandado como negocio en aquella época una empresa de coches para el servicio del público en el patio de la casa de su residencia radicada en la prolongación de la calle San Agustín, resolvió ir rellenando poco a poco parte de dicho solar para comunicarse a través de él con la calle de la Rosa, y que, al efecto, rellenó y afirmó un callejón como de tres metros de ancho, poco más o menos, en las colindancias norte y este de dicho solar, que utilizó desde entonces, hace ahora poco más o menos veinte años, como camino para salir sus coches a la calle de la Rosa y de ésta al centro de la

población, y que por mera tolerancia y condescendencia permitió también que otras personas atrecharan por dicho callejón desde la prolongación de la calle San Agustín a la calle de la Rosa, o viceversa; destinando el resto del solar al cultivo de guineos, malangas y otros productos, que han ido desapareciendo a medida que ha ido rellenando dicho solar y su superficie resulta incultivable; llevándose a efecto las últimas obras de relleno de dicho solar en octubre de 1931, utilizando para ello parte de unos escombros que estaban botando del Hospital Municipal.

La corte inferior declaró sin lugar la demanda basándose en que el demandado era dueño del terreno que estaba al oeste de la casa y solar de los demandantes y en que dicho solar nunca ha sido calle ni camino público. Agrega la corte que el demandado por mera tolerancia, condescendencia e indulgencia, permitió el paso por la parte afirmada de dicho solar. En los particulares en los cuales la prueba resulta contradictoria, la corte inferior resuelve el conflicto de la misma en contra de la parte demandante, por la naturaleza de los testimonios en los particulares relacionados con la materia a que los mismos se refieren.

■■ Alegan los apelantes en primer término que la corte inferior cometió error al declarar ambiguamente que había resuelto el conflicto de la evidencia cuando en realidad no existió evidencia contradictoria, ya que la prueba de los demandantes y aun la del demandado sostiene y prueba el caso de los demandantes. En el segundo señalamiento de error se dice que la corte inferior ha resuelto el presente caso por una cuestión de derecho, como si se tratara de una acción reivindicatoria, cuando de acuerdo con la ley y la jurisprudencia estaba obligada a resolverlo como una cuestión de hecho en favor del público en general y de los demandantes.

No están de acuerdo las partes en cuanto a la prueba se refiere. Hay ciertas diferencias que fueron apreciadas por la corte, con muy buen acierto, a nuestro juicio, ya que la débil prueba de los demandantes no puede equipararse a la

prueba clara y robusta del demandado. El demandante, Jesús Trujillo Lange, y su testigo Eusebio Castro, declaran que parte del solar del demandado se usaba como camino para pasar carros antes de haber adquirido dicho solar el Sr. López Fernández. El Sr. Castro declara que desde 1876 caminaban por ella carros. Este testimonio está en conflicto con la prueba testifical del demandado y el plano de la ciudad de Mayagüez trazado en 1888. En este plano figura la prolongación de la calle de la Rosa hacia el oeste, partiendo de la calle de Mirasol, en una extensión de noventa metros, sin alcanzar el solar del demandado. El callejón considerado por los demandantes como calle o camino público no aparece en el plano. El terreno ocupado por el solar del demandado se marca en el plano como vegetación, según se observa claramente y según declara el ingeniero municipal Sr. José R. Acosta. Hoy la calle de la Rosa, partiendo de la calle Mirasol hacia el oeste, se prolonga hasta la casa del Sr. Trujillo Lange, en una extensión de 140 metros.

Los demandantes entienden que la corte debió limitarse a resolver cuestiones de hecho, sin penetrar en las cuestiones de derecho que surgen de la prueba practicada. No vemos cómo pueda impartirse justicia en este caso si prescindimos de las cuestiones de hecho y de los derechos del demandado. La corte inferior declara que el demandado es dueño del solar que abarca el callejón considerado por los demandantes como una calle o camino público. Esta es una cuestión de hecho, y partiendo de esta base la corte sentenciadora concluye que el demandado no se ha desprendido nunca, ni en todo ni en parte, del dominio del referido solar. Las conclusiones establecidas por la corte inferior surgen de la prueba practicada que resulta clara en favor del demandado.

La prueba, a nuestro juicio, demuestra que cuando el demandado compró el solar había una vereda o camino como de $1\frac{1}{2}$ metros por donde podía pasarse a pie a la calle de la Rosa. El demandado ensanchó el paso, afirmándolo de manera que pudiesen pasar coches. No se ha demostrado que

el demandado haya realizado ningún acto en limitación de sus derechos dominicales sobre el terreno en cuestión. En la actualidad ese callejón mide nueve pies de anchura en la parte que linda con el Sr. Trujillo Lange, según se demuestra por la prueba, especialmente el testimonio del ingeniero municipal José R. Acosta, quien dice además que el tráfico por allí era poco, y que solamente cabe un vehículo, un coche o automóvil en ese sitio. Con excepción del demandante no aparece ninguna otra persona quejándose de que se le haya privado de algún derecho al impedirse el paso por el referido callejón. Las autoridades municipales y el fiscal del distrito fueron notificados del alegado estorbo público y no han tomado acción alguna. Se hace hincapié en la declaración del Sr. Acosta, quien al preguntársele si el callejón estaba registrado en el municipio contestó: "En el plano que se hizo en 1929 sí; ahora, sobre escrituras y eso, no." El testigo Oscar Castro declara que es auditor municipal de Mayagüez desde el año 1921, que de acuerdo con los récords de su oficina, el municipio nunca ha gastado nada en la conservación del callejón en disputa, que se denomina también "Callejón del Aguacate." Antonio Olivencia, secretario del municipio de Mayagüez desde 1921, declara que conoce al Sr. Trujillo Lange y también la calle Santa Isabel, y el terreno que está al oeste de la casa donde vive el demandante. Refiriéndose al callejón manifestó el testigo que "con motivo de este incidente estuvo buscando los récords de su oficina y no aparece ninguno que acredite que ese callejón sea propiedad del municipio." Añade el testigo que conoce el terreno donde se encuentra el callejón desde hace más de treinta años, y que por allí solamente se podía pasar a pie, y que después fué ensanchado y pasaban coches; el terreno fué afirmado desde hace como veinte años. No hay prueba alguna de que el municipio haya adquirido la propiedad del callejón mencionado en virtud de algún título. En este respecto hay ausencia de prueba. La única persona que aparece con un título sobre ese terreno es el demandado. La mera tolerancia del uso de ese camino

no puede tener el alcance de limitar el dominio del demandado sobre el terreno mencionado.

No declara el Sr. Acosta, como dicen los demandantes en su alegato, que la calle del Tendal sea llamada por unos callejón del Aguacate, y por otros Santa Isabel Segunda. El testigo dice que el callejón que se llama Aguacate parte de la calle de la Rosa, donde hay una curva, saliendo a la calle más ancha hacia el norte, "a la calle que se llama hoy 'de los Millonarios' ", y que según ha oído decir se llamaba por unos Tendal y por otros Santa Isabel Segunda. Claramente se ve que el Sr. Acosta se limita a decir que este callejón del Aguacate sale a la calle que se llamó antes Tendal y Santa Isabel Segunda y hoy se llama calle de los Millonarios. El demandante Trujillo dice que su casa linda por el oeste con la calle del Tendal y el demandado designa un callejón sito detrás del Hospital de San Antonio, lindando por el este con su casa vivienda. Esta casa está enclavada en un solar que mide once metros setenta y nueve centímetros de frente por veinticinco metros ocho centímetros de fondo, y fué adquirido en distintas fechas, una parte en 1896 y otra en 1900, según se acreditó en expediente de dominio aprobado en 1914. La deducción que hace el abogado de los demandantes de que este callejón existía en 1896 y en 1900 no surge de la prueba documental, toda vez que el callejón se menciona en 1914 al describirse englobadas las dos parcelas que fueron adquiridas separadamente con anterioridad. En esta mención del referido callejón ponen mucho énfasis los demandantes. El demandado declara que a la calle que pasa frente a su casa de vivienda se le dice Tendal, pero que es prolongación de la calle San Agustín. Sobre este particular la prueba testifical no es todo lo clara que fuera de desear. Sin embargo, hay un dato que demuestra claramente la posición del solar del demandado donde está enclavado el callejón en relación con la casa y solar de los demandantes. En la escritura de venta otorgada por doña Eugenia Antonia Guenard y Carrié a favor del demandado, con el No. 424, ante el notario Lic. Ma-

riano Riera Palmer en 10 de agosto de 1908, se dice que la vendedora es dueña de un solar de 9 varas de frente por 26 de fondo, radicado en la calle de la Rosa, que linda por el este con Nicomedes Sánchez antes, hoy Margarita Avilés, y por el oeste con la prolongación de la calle de San Agustín. En esa misma escritura se dice que ese solar es el resto de uno que se le adjudicó en la división de los bienes otorgada ante el mismo notario, por los herederos de doña Isabel y de don José Guenard y Carrié, en 19 de septiembre de 1899, que había sido segregado de una superficie de 7122 varas y que tenía una capacidad de 478 varas cuadradas, o sea 18 varas por su frente principal, sur, a la calle de la Rosa, por 26 de fondo, con solar y tierra de la sucesión de doña Isabel Guenard, y a la izquierda prolongación de la calle San Agustín. Como se ve el solar de 478 varas cuadradas lindaba por el este con Nicomedes Sánchez antes, hoy Margarita Avilés, siendo ésta la madre de la esposa del demandante, Sra. de Trujillo Lange. De modo que en 1908, cuando el demandado adquirió el mencionado solar, sus vendedores daban como colindancia hacia el este el solar propiedad hoy de los demandantes, y no el callejón en cuestión.

El propio demandante Sr. Trujillo Lange dice en su testimonio, producido en 1931, a preguntas del abogado del demandado, que su casa ha sido ampliada recientemente, como hace dos años, y que en esa reforma se le puso balcón a la parte oeste, quedando la mayor parte del frente, según afirma el propio demandante, en la calle de la Rosa. El ingeniero Sr. Acosta dice que el frente de la casa de los demandantes es la calle de la Rosa, siendo la esquina un callejón al oeste llamado Aguacate. A la prueba testifical y documental hay que añadir la inspección ocular practicada por el juez que falló el caso declarando sin lugar la demanda. Los demandantes tienen franca salida por el frente de su casa que queda en la calle de la Rosa.

Los demandantes arguyen que éste es un caso que debió ser resuelto por los hechos, que los títulos de propiedad de

las partes no han debido decidir la cuestión, y que lo único que la corte inferior tenía que resolver es el hecho y no el derecho que pudiera tener el público o los demandantes al callejón o calle Tendal. En apoyo de sus contenciones citan los demandantes el caso de *Fernández* v. *González,* 41 D.P.R. 726, en el que este tribunal resolvió que en interdictos para recobrar la posesión se discute y resuelve sólo el hecho y no el derecho de posesión y que en *injunctions* para recobrar posesión del uso de un camino no es admisible prueba sobre el derecho con que el demandante pasara por el camino en cuestión. No debemos olvidar que los demandantes en este caso solicitan la eliminación de un estorbo público y que no alegan derecho alguno al uso del callejón o camino en su carácter privado. Sus alegaciones sostienen que se trata de una calle pública y que debe dejarse expedito el paso, porque si se permitieran las cercas que obstruyen ''la calle del Tendal se causaría por el demandado al público en general y a los demandantes un daño irreparable por no poder utilizar como se utilizaba desde tiempo inmemorial la referida calle.'' Se alega una servidumbre o calle pública existente desde tiempo inmemorial y sabido es que según nuestro Código Civil la servidumbre de paso sólo puede adquirirse en virtud de título. Los demandantes, a nuestro juicio, tienen que probar el carácter público del camino para que puedan obtener un éxito favorable en sus empeños. La prueba demuestra que el demandado ha estado constantemente ejerciendo actos de posesión sobre el callejón mencionado y que únicamente por mera tolerancia ha permitido a otras personas que pasen por el mismo.

Los demandantes afirman que se trata de una calle pública y alegan que esa calle o camino se viene usando por el público desde tiempo inmemorial. No se dice que este callejón haya sido dedicado al público por el demandado. La demanda está huérfana de toda alegación que pudiera comprender los elementos constitutivos de una acción basada en la teoría de que el dueño del terreno que ocupa la alegada

calle lo hubiera dedicado a que sirviera en alguna ocasión como un camino público. No surge de la prueba tampoco un acto de dedicación. En el caso de *Jordán* v. *Rodríguez,* 32 D.P.R. 619, esta corte se expresó así:

"La manifestación del testigo Santana nos deja hasta cierto punto en duda respecto a si la llamada acera se usaba principalmente para fines de tráfico o como incidental a la protección que suministraba el alero a lo largo del edificio. Hubiera sido más apropiado haber presentado con un poco más de detalles la cuestión sobre el fin que persiguiera el primo y anterior dueño del edificio al construir la 'acera'. También sería interesante saber algo más preciso sobre la escalera al final de la 'acera', como por ejemplo, si los escalones se hicieron expresamente por el anterior dueño para conveniencia del público, o si fueron un mero accidente de construcción, o si se desgastaron por el tiempo y la intemperie o por el uso público, o si fué improvisación de algunos ciudadanos interesados en el beneficio público y como medio de acceso a esta 'acera' de tan rara construcción.

*       *       *       *       *       *       *

"El dueño de una casa situada en terrenos de otro puede, si el dueño del terreno no se opone, construir allí una acera o cualquier otra edificación que sirva para el mismo fin y si así lo desea, dedicarla al uso público. Pero el uso poco frecuente más o menos intermitente, por parte del público, durante un período de 16 ó 18 años, de una pared maestra u otra construcción levantada con algún fin que el dueño conoce mejor que nadie, no puede sin más, producir el efecto de una dedicación al público.

*       *       *       *       *       *       *

"Tampoco encontramos la más leve prueba en apoyo de la conclusión a que llegó la corte inferior de que la nueva alineación o ensanche de la calle resultó en perjuicio de otros, dueños de propiedades en 'línea directa hacia el Sur.' Por otra parte es una circunstancia muy significativa que ninguno de estos dueños de propiedades colindantes se ha unido al peticionario en su protesta ni comparecido como testigo en el caso.''

La prueba aportada por los demandantes y sus propias alegaciones conducen a la conclusión de que el carácter público del callejón se hace depender del uso del mismo desde tiempo inmemorial. No se alega quién fué el dueño de dicho terreno, cómo se empezó a usar el camino, ni cómo fué que

se convirtiera en calle ni qué derecho ni obligaciones tiene el municipio de Mayagüez para considerarlo como parte de la ciudad. Las únicas alegaciones sobre el dominio del terreno donde está enclavado el callejón aparecen hechas por el demandado y estas alegaciones han sido sostenidas por la prueba. Los demandantes descansan en el alegado uso del terreno desde tiempo inmemorial. En el caso de *Nadal* v. *Muratti,* 34 D.P.R. 251, la corte se expresó así:

"El año de 1890 es de importancia decisiva porque con él comenzó a regir el Código Civil y desde su vigencia la servidumbre de que se trata sólo pudo adquirirse a virtud de título y aquí ni siquiera se ha invocado ese medio de adquisición.

"El caso de Nido & Cía. v. Alicea, 27 D.P.R. 34, que cita en su opinión el juez sentenciador, no es igual al presente. Allí la misma parte a quien podía perjudicarle, admitió que era aplicable la legislación anterior al Código Civil y además de la prueba de testigos, ancianos que declararon sobre el uso inmemorial, presentáronse las admisiones de uno de los antiguos dueños del predio sirviente. Aquí la misma corte de distrito declaró probado que el camino fué abierto, data, de la zafra de 1893 a 1894; no hubo admisiones y las propias declaraciones de los testigos de la demandada analizadas cuidadosamente no sostienen su contención, esto es, el uso inmemorial.

\* \* \* \* \* \* \*

"Claro es que el callejón que se venía usando resultaba más fácil. El hecho del paso por mera tolerancia se repite constantemente en las fincas de Puerto Rico. Las crecientes de ríos y quebradas, el mal estado de ciertos caminos vecinales, los atrechos, las amistades, el establecimiento de escuelas y comercios en determinados sitios, el temor de provocar conflictos o disgustos, el deseo de favorecer a los convecinos acortando distancias y facilitando el tráfico, y otras muchas circunstancias podrían señalarse como causa para ello. Seguramente fué una situación semejante y la idea de dar fijeza y certidumbre a un derecho para uno y a un gravamen para otro de tal importancia, la que obligó al legislador español a variar la ley y al legislador puertorriqueño a no alterar la variación. Así el paso que meramente se permite subsiste generalmente mientras de él no se abusa, como las pruebas demuestran que se abusó en este caso. Y así cuando se desea obtener un derecho absoluto y para siempre, se sabe que hay que ir al contrato, a la adquisición del derecho mediante la compensación apropiada, garantizando la ley hipotecaria por me-

dio de la inscripción el derecho que se adquiera en cuanto a terceros. A partir del 1890 las situaciones vagas, indefinidas en esta clase de servidumbres, desaparecieron en Puerto Rico."

A la prueba testifical del demandado, que claramente demuestra qué no hubo uso del camino por tiempo inmemorial, hay que añadir el plano de la ciudad de Mayagüez en 1888, donde como ya dijimos antes, el terreno que hoy forma el callejón aparece designado como vegetación. El demandado afirmó ese terreno, para dar paso a sus coches, después de haberlo comprado en 1908.

En el caso de *Gierbolini* v. *Sucesión Rodríguez,* 23 D.P.R. 870, se estableció por el demandante una acción para hacer cesar una supuesta perturbación o estorbo privado de acuerdo con el artículo 277 del Código de Enjuiciamiento Civil. Las cuestiones de hecho y de derecho quedaron expuestas por la corte en la siguiente forma:

"Los demandados admitieron lo relativo al cierre del camino, pero negaron la existencia de una servidumbre.

"Los hechos esenciales que han sido declarados probados por la corte inferior, son que el demandante es el dueño de la finca que se describe en primer lugar en la petición; que el camino, paso, o sendero que atraviesa la finca del demandado había sido usado por muchos años como vía de entrada y salida de la finca del demandante; que dicho camino ha sido cerrado por los apelados como se ha alegado; que el peticionario dejó de probar el uso o posesión del camino desde tiempo inmemorial como fué alegado, y, por tanto, que la pretendida adquisición del derecho de servidumbre de paso por prescripción no había sido probada.

"La sentencia pronunciada es, en efecto, que la ley y los hechos están en contra del peticionario y a favor de los apelados, y que debe declararse sin lugar la demanda sin especial condenación de costas.

"El apelante no ataca directamente la corrección de ninguna de las conclusiones a que llegó la corte inferior, pero insiste en el hecho de haber apreciado erróneamente dicha corte la naturaleza de la acción y el significado y alcance de ciertas alegaciones de la demanda y que fué más allá de las cuestiones envueltas en la discusión al resolver la cuestión de reclamaciones opuestas respecto a los verdaderos derechos de propiedad. El razonamiento impugna más bien el criterio del juez sentenciador y los fundamentos que sirvieron de base

a su decisión que la decisión misma. El alegato se funda aparentemente en cierta vaga teoría de que cualquier intervención con el uso y disfrute de la propiedad es una perturbación (*nuisance*), prescindiendo tanto de lo que constituye una perturbación, como de todos los derechos de los propietarios colindantes, siendo la deducción la de que el mero hecho de cerrar los apelados un camino o paso por su propia finca levantando una palizada a través del mismo en su finca, unido esto a la circunstancia de que la finca colindante del peticionario queda por tal motivo privada de su medio habitual de entrada y salida, camino que por mera tolerancia o condescendencia se ha permitido que use el peticionario por algún período de tiempo indefinido anterior a dicho cierre, confiere un derecho de acción al peticionario. No sabemos de ningún caso en que se sostenga ese criterio como tampoco ningún principio legal que pueda sostenerlo.

"Por tanto, si la corte incurrió en error, como se alega, al interpretar la petición en el sentido de que lo que en ella se quiere decir es una intervención en el uso y disfrute de la servidumbre más bien que con el supuesto predio dominante, no podemos comprender en absoluto qué perjuicio ha sufrido el apelante con motivo de dicho error. El derecho al paso se funda única y exclusivamente en el supuesto uso inmemorial con anterioridad a la adopción del Código Civil Español. El peticionario dejó de probar por completo el título por prescripción y no existe la más leve prueba, ni la más remota deducción de ninguna de las alegaciones de la petición, respecto a ningún otro posible origen del título o derecho legal de servidumbre."

■■ Dada la claridad de los derechos del demandado, no hay que hacer grandes esfuerzos para llegar al convencimiento de que la corte inferior apreció correctamente los hechos e interpretó correctamente la ley. El uso del camino por tiempo inmemorial, aparte de que no ha sido probado, no basta por sí solo para culminar en servidumbre. Si la mera tolerancia, como dice esta corte en el caso de *García* v. *García*, 25 D.P.R. 128, no crea derecho alguno, no es de importancia la consideración del elemento tiempo. . En cualquier época puede la persona que ha venido voluntariamente tolerando, tomar otra actitud, y demandar y obtener el pleno reconocimiento de sus derechos.

El tercer señalamiento de error consiste en haber declarado la corte que el demandado puede cercar y obstruir el

callejón referido, cuyo uso por el público se debió a mera tolerancia. El cuarto error consiste en no haber declarado la corte que el uso del referido callejón, que el demandado llama calle del Tendal, es una servidumbre que puede recobrarse por medio de un procedimiento de *injunction*. Estos errores han sido resueltos, en nuestra opinión, al aceptar el criterio de la corte inferior sobre la no existencia de servidumbre, y al concluir que la mera tolerancia del uso del camino no puede privar al demandado de sus derechos sobre el mismo.

*Debe confirmarse la sentencia apelada.*